[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S APPEAL
The plaintiff appeals from the decision of the defendant Commissioner of Motor Vehicles ordering the suspension of his motor vehicle license for a period of ninety (90) days in accordance with Connecticut General Statutes Section 14-227b.
The record discloses the following.
On May 9, 1990 a hearing was held before James Quinn, Hearing Officer, to determine whether or not the plaintiff's motor vehicle operator's license would be suspended. The hearing was held under the authority of Connecticut General Statutes Section 14-4a, and Public Act No. 89-314, and Regulations of Connecticut State Agency Section 14-137-36 to14-137-39, and Sections 14-227b-1 through 14-227b-29.
At the hearing, over the objection of counsel for the plaintiff, the hearing officer entered into evidence exhibit A which consists of the following: (a) the officer's report, entitled "Officer's D.W.I. Arrest and Alcohol Test Refusal or Failure Report". This report consists of two (2) separate pages. Attached to the second page are two test records marked, first test and second test. The first test record recorded CT Page 7940 0.238. The second test record measured 0.243. (b) a five (5) page Department of Police-Norwich, Connecticut incident report.
The two page report was made under oath by Officer Blanchette of the Norwich Police Department. The five page report is signed by Officer McMahon but is not under oath. The five page report discloses that on April 17, 1990 at 10:10 p.m., Officer McMahon and Officer Ladd, also of this department, were on routine patrol traveling east bound on Hunters Rd., approaching its intersection with the private drive which accesses the Oakland Heights Trailer Park, located on 136 Hunters Rd.
As Officer McMahon began to enter a left curve, which leads from the entrance of Oakland Heights Trailer Park, into an S-type curve on Hunters Rd., to Hunters Ave., the accused who was traveling west bound on Hunters Rd., crossed over into the east bound lane causing Officer McMahon to swerve to the right to avoid a collision. The accused continued west bound on Hunters Rd.
The accused was stopped on Hunters Rd., at its intersection with Mohegan Park Rd. The accused was noted to be the lone occupant of the vehicle, which was observed continuously from the moment of the violation to the time the accused's vehicle was stopped. The accused was then asked for his operator's license and vehicle registration. The accused fumbled with the requested paperwork. Officer McMahon detected a strong odor of liquid intoxicants emitting from the accused's breath as he spoke.
The accused was requested to recite the alphabet which the accused did. The accused speech was slurred and lathargic, and the accused could not recite the alphabet in its proper consecutive order. The accused was then administered a finger dexterity test, which the accused failed.
The accused then exited his vehicle at Officer McMahon's request, at which time the following Field Performance Test was administered.
Officer McMahon first attempted to administer the Horizontal Gaze Nastagmas which the accused would or could not do.
Balance; The accused was asked to stand perfectly still, with his hands to his side and his feet together, and his eyes closed. The accused involuntarily swayed from side to side. CT Page 7941
Heel-to-Toe; The accused stumbled as he walked, at one time needing assistance from Officer Ladd to prevent from falling to the ground.
Finger-to-Nose; The accused missed with both his left and right fingers.
The accused was placed under arrest, handcuffed and placed into the rear of Officer McMahon's cruiser. The accused's vehicle was legally parked after obtaining permission from the accused. The accused was then transported to this department, and upon arrival, the following transpired with Officer M. Blanchette, also of this department, processing.
2230 hrs; The accused was given his Notice of Rights, which the accused signed stating that he understood.
2231 hrs; The accused was advised of the consequences of chemical alcohol test refusal or failure ver batem, as it appears on the Alcohol Refusal or Failure Report.
2232 hrs; The accused was afforded the opportunity to contact an attorney, via telephone, which the accused declined to do.
2235 hrs; The questionnaire portion of the Alcohol Refusal or Failure Report was completed by Officer Blanchette.
2246 hrs; The accused was administered the first of two chemical test, utilizing this departments Intoximeter 3000, which showed the accused BAC to be. 238.
2250 hrs; The accused was afforded the opportunity to submit to a Field Performance Test in a climate controlled environment, which the accused declined to do.
2317 hrs; The accused was administered the second chemical test, again utilizing this departments Intoximeter 30000, which showed the accused BAC to be. 243.
2320 hrs; The accused was advised of his right to a third chemical of his choosing, which the accused declined. At this time, the accused's Connecticut operators license was seized, the accused operating privileges were suspended for a period of (24) twenty-four hours, and the accused was issued a temporary operators license (#007617) which is valid for (35) thirty five days.
The accused was then released on a $250.00 Non-Surety bond, per order of the shift supervisor, Lt. Gavigan. The CT Page 7942 accused was transported to his residence where he resides with his mother.
NCIC on the accused was negative.
NOTE: While interviewing the accused, after said accused had already signed his Notice of Rights, the accused stated that he had been drinking at the Sprague Rod Gun Club prior to operating his vehicle. The accused stated that he had consumed "two to three" Budweiser Dry beers."
The arresting officer was Officer McMahon. The two page officer's report entitled "Officer's D.W.I. Arrest and Alcohol Test Refusal or Failure Report" reveals that the chemical alcohol intoximeter test administered on April 17, 1990 at 8:46 p.m. resulted in a reading of .238%. The second intoximeter test administered at 11:17 p.m. on April 17, 1990 resulted in a reading of .243%. The analytical device was certified by the Commissioner of Health Services. The analytical device was operated by a certified analyst using an approved method which he is currently certified to perform. Lastly the analytical device was checked for accuracy prior to each test and after each test by a person certified by the Department of Health Services. The plaintiff did not testify at the hearing held on May 9, 1990. The hearing officer made the following findings of fact and conclusions of law:
1. The police officer had probable cause to arrest the above-named operator for a violation specified in Section 1 of Public Act 89-314.
2. The operator was placed under arrest.
3. The operator submitted to the test or analysis and the results indicated at the time of the offense a BAC of .10 or more.
4. Said person was operating the motor vehicle.
The decision was rendered on May 12, 1990. This appeal was filed following the decision to suspend the plaintiff's operating privilege for a period of ninety (90) days.
The plaintiff did not subpeona any of the police officers who were involved either in the arrest or in the testing nor did he request a postponement of the hearing for that purpose.
I. STANDARD OF REVIEW CT Page 7943
On review of an agency's action the court is bound by the requirements of Conn. Gen. Stat. Sec. 4-183 (j) and (k) which provide:
 (j) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on question of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decision are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. For purposes of this section, a remand is a final judgment.
 (k) If a particular agency action is required by law, the court, on sustaining the appeal, may render a judgment that modifies the agency decision, orders the particular agency action, or orders the agency to take such action as may be necessary to effect the particular action.
Under the statute in question here, the issues to be decided in the administrative hearing are:
 The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for manslaughter in the second degree with a motor vehicle or for assault in the second degree with a motor vehicle or for operating a motor vehicle while under the influence of intoxicating CT Page 7944 liquor or drug or both or while his ability to operate such motor vehicle was impaired by the consumption of intoxicating liquor; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis and the results of such test or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten hundredths of one per cent or more of alcohol, by weight; and (4) was such person operating the motor vehicle.
Connecticut General Statutes Section 14-227b(f).
Further in discussing the standing of judicial review of administrative agency rulings the court in State Medical Society v. Board of Examiners in Podiatry, 208 Conn. 709, 717
(1988) stated in part as follows:
 The standard of judicial review of administrative agency rulings is well established. Section 4-183 (g) permits modification or reversal of an agency's decision "if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." The trial court may not retry the case or substitute its judgment for that of the agency on the weight of the evidence or questions of fact.
II. AGGRIEVEMENT
The UAPA allows an "aggrieved" person to appeal from a final decision of an agency. Connecticut General Statutes Section 4-183 (a), as amended by Connecticut Public Act No. 88-317, Section 23 (eff. July 1, 1989). The party claiming to be aggrieved must first "demonstrate a specific personal and CT Page 7945 legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole," and second, must "establish that this specific personal and legal interest has been specially and injuriously affected by the decision." State Medical Society v. Board of Examiners in Podiatry, 203 Conn. 295,299-300 (1987). One whose license is suspended pursuant to Section 14-227b "is an aggrieved person within the meaning of General Statutes Section 4-183 (a) in that a specific, personal and legal interest, his license to drive, has been adversely affected." Tarascio v. Muzio, 40 Conn. Sup. 505, 507 (1986). Therefore, the plaintiff is aggrieved.
The plaintiff contests the findings of fact and conclusions of law of the hearing officer on the following grounds:
1. The hearing officer violated the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States by basing his findings of facts on conclusions of law on unsworn and unsubstantiated evidence.
2. There was an inadequate foundation laid for the admittance of the BAC test results in that the record is
(a) devoid of any substantial evidence relating to the qualifications of the person administering the test as required by Section 14:227a-10(c);
(b) devoid of any substantial evidence relating to the accuracy of the intoximeter at the time of the test as required by Section 14-227a-10(a)(b).
(c) devoid of any substantial evidence establishing that the subject had been under continuous observation for at least fifteen minutes prior to the test as required by Section 14-227a-10(b)(1)(A).
(d) devoid of any substantial evidence that the breath sample taken from the Plaintiff was "air which alveolar in composition" as required by Section 14-227a-10(b)(1)(A).
(e) devoid of any substantial evidence regarding the certification of the operator as required by Section14-227a-10(c).
3. There was no substantial evidence offered relating to the Plaintiff's BAC at the time of the operation, and the hearing officer exceeded his authority by taking judicial notice of the Plaintiff's BAC at the time of operation. CT Page 7946
4. The unsworn police report was improperly admitted as it contained hearsay concerning directly the matter at issue which was substantially prejudicial to the rights of the Plaintiff.
5. There was no substantial evidence to support a finding that probable cause existed to arrest the Plaintiff since that finding was based upon unsworn police reports.
6. There was no substantial evidence to support a finding that the Plaintiff had been placed under arrest since that finding was based upon unsworn police reports.
7. There was no substantial evidence to support the finding that the Plaintiff was the operator of a motor vehicle since that finding was based upon information contained in unsworn police reports.
These claims will be discussed seriatim.
A. THE PLAINTIFF'S CLAIM THAT THE HEARING OFFICER VIOLATED THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES BY BASING HIS FINDINGS OF FACT ON CONCLUSIONS OF LAW ON UNSWORN AND UNSUBSTANTIATED EVIDENCE.
In support of that claim the plaintiff argues in part as follows:
 The regulations of Connecticut State Agencies Section 14-227b-10(a) states that the arresting officer shall prepare a written report of the facts surrounding the person's arrest on a form approved by the Commissioner. Section 14-137-38 (k) provides all testimony presented at a hearing shall be taken under oath. The record is devoid of any evidence that the author of motor vehicle form A-44, which was used to prove probable cause was Officer McMahon. Further the statements were never sworn to or affirmed by Officer McMahon. By admitting the unsworn statement into evidence without any foundation to explain the facial inconsistencies, the hearing officer acted on unsworn and insubstantial evidence which is beyond the scope of Connecticut General Statutes Section 4-178 (3) and in contravention of the Due Process Clause of CT Page 7947 the Fourteenth Amendment of the United States Constitution and, Sections 8, 9, 10 and 11 of the Constitution of the State of Connecticut.
The court is not persuaded by that argument.
A police report generally is admissible as a business record under General Statutes Section 52-180. State v. Sharpe,195 Conn. 651, 663, 491 A.2d 345 (1985). There is no requirement that the police report be sworn to. To the extent that the plaintiff argues that the police report is unsigned, the court notes that in each block of the report on the lower left hand side the name McMahon is typed in and a signature appears in that block. The plaintiff also claims that form A-44 "Officer's D.W.I. Arrest and Alcohol Test Refusal or Failure Report" that report on page 1 has typed in the fact that the arresting officer was "Ofc. P. McMahon, Badge #53". The Department of Police, Norwich, Connecticut five page incident report also shows that Officer McMahon is Badge #53. The court finds that the arresting officer was Officer McMahon and that Officer McMahon did not sign the Refusal or Failure Report. The issue then is whether that Refusal or Failure Report also known as form A-44 was properly admitted as an exhibit. Form A-44 was signed by Officer Blanchette as the testing officer and was sworn to before Sgt. Bernes. Section 14-227b(c) provides in part as follows:
 The report shall be made on a form approved by the Commission of Motor Vehicles and shall be sworn to under penalty under false statement as provided by Section 53a-157
the police officer before whom such refusal was made or who administered or caused to be administered such test or analysis. (Emphasis provided)
This court therefore concludes that the failure of the arresting officer to sign form A-44 does not affect its admissibility before the hearing officer.
The plaintiff has failed to sustain his due process claim.
B. PLAINTIFF'S CLAIM THAT THERE WAS AN INADEQUATE FOUNDATION LAID FOR THE ADMITTANCE OF THE BAC TEST RESULT IN THAT THE RECORD IS (a) DEVOID OF ANY SUBSTANTIAL EVIDENCE RELATING TO THE QUALIFICATIONS OF THE PERSON ADMINISTERING THE TEST AS REQUIRED BY SECTION 14-227a-10 (c). CT Page 7948
The court is not persuaded by that argument. Form A-44 has the block checked that the analytical device was operated by a certified analysis using an approved method which he is currently certified to perform. That statement having been made under oath constitutes substantial evidence relating to the qualifications of the person administering the test.
C. PLAINTIFF'S CLAIM THAT THERE WAS AN INADEQUATE FOUNDATION LAID FOR THE ADMITTANCE OF THE BAC TEST RESULTS IN THAT THE RECORD IS (b) DEVOID OF ANY SUBSTANTIAL EVIDENCE RELATING TO THE ACCURACY OF THE INTOXIMETER AT THE TIME OF THE TEST AS REQUIRED BY SECTION 14-227a-10(a)(b)
The court is also not persuaded by that argument. Once again form A-44 provides the required substantial evidence in that the block has been checked that the analytical device was checked for accuracy prior to each test and after each test by a person certified by the Department of Health Services.
D. THE PLAINTIFF'S CLAIM THAT THERE WAS AN INADEQUATE FOUNDATION LAID FOR THE ADMITTANCE OF THE BAC TEST RESULT IN THAT THE RECORD IS (c) DEVOID OF ANY SUBSTANTIAL EVIDENCE ESTABLISHING THAT THE SUBJECT HAD BEEN UNDER CONTINUOUS OBSERVATION FOR AT LEAST 15 MINUTES PRIOR TO THE TEST AS REQUIRED BY SECTION 14-227a-10 (b)(1)(A).
The court is also not persuaded by that argument. Form A-44 indicates that the analytical device was used by an approved method. That is sufficient to show that the plaintiff was under continuous observation for the required 15 minutes.
E. THE PLAINTIFF'S CLAIM THAT THERE WAS AN INADEQUATE FOUNDATION LAID FOR THE ADMISSIBILITY FOR THE BAC TEST RESULT IN THAT THE RECORD IS (d) DEVOID OF ANY SUBSTANTIAL EVIDENCE THAT THE BREATH SAMPLE TAKEN FROM THE PLAINTIFF WAS "AIR WHICH ALVEOLAR IN COMPOSITION" AS REQUIRED BY SECTION14-227a-10 (b)(1)(A).
Once again the court is not persuaded by that argument. Form A-44 does show that the analytical device was operated using an approved method. That is sufficient to constitute substantial evidence that the breath sample was properly taken.
F. THE PLAINTIFF'S CLAIM THAT THERE WAS AN INADEQUATE FOUNDATION LAID FOR THE ADMITTANCE OF THE BAC TEST RESULTS IN THAT THE RECORD IS (e) DEVOID OF ANY SUBSTANTIAL EVIDENCE REGARDING THE CERTIFICATION OF THE OPERATOR AS REQUIRED BY SECTION 14-227a-10(c). CT Page 7949
The court is also not persuaded by that argument. Form A-44 states that the analytical device was operated by a certified analyst. That certification is sufficient constitutes substantial evidence regarding the certification of the operator.
G. THE PLAINTIFF'S CLAIM THAT THERE WAS NO SUBSTANTIAL EVIDENCE OFFERED RELATING TO THE PLAINTIFF'S BAC AT THE TIME OF THE OPERATION AND THE HEARING OFFICER EXCEEDED HIS AUTHORITY BY TAKING JUDICIAL NOTICE OF PLAINTIFF'S BAC AT THE TIME OF OPERATION.
At the request of the court at a status conference held with counsel for both parties, the court requested supplemental briefs on this issue. The court wishes to express appreciation to both counsel for having filed such briefs.
The thrust of the plaintiff's argument regarding this claim is that there was no evidence of the BAC at the time of the alleged offense. The plaintiff argues that the hearing officer could not take judicial notice of the plaintiff's BAC at the time of the alleged offense based on the test results that were taken approximately 35 minutes and approximately 70 minutes after the plaintiff's arrest.
The court is not persuaded by that argument.
Section 14-227b(c), in discussing the nature of the report to be submitted to the Commissioner of Motor Vehicles, provides in part that the report "shall state that such person. . . submitted to such test or analysis and the results of such test or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight."
There is nothing in that section to indicate that the police officer is expected to extrapolate the test from the time it was taken back to the time that the person was operating a motor vehicle. Further, of the four determinations to be made at the hearing, the third determination is whether "the results of such test or analysis indicated that at the time of the alleged offense a ratio of alcohol in the blood of such person was ten-one hundredths of one per cent or more of alcohol, by weight." The exact language used in Section 14-227b(c) for the police officer to immediately revoke and take possession of the motor vehicle operator's license and to be part of the report submitted to the Commissioner of Motor Vehicles is also found in Section 14-227b(f) regarding one of the four issues to be determined at the hearing. This court concludes that it logically follows that both the grounds for immediately revoking and taking possession of a motor vehicle license under Section CT Page 795014-227b(c) and the grounds for the finding of the third issue found in Section 14-227b(f) allowed both the officer who administered the test and the hearing officer to make a finding that the test or analysis indicates that at the time of the alleged offense the ratio of alcohol in the blood was ten-hundredths of one per cent or more of alcohol by weight based on the test results at the time the tests are performed.
H. THE PLAINTIFF'S CLAIM THAT THE POLICE REPORT WAS IMPROPERLY ADMITTED AS IT CONTAINED HEARSAY CONCERNING DIRECTLY THE MATTER AT ISSUE WHICH WAS SUBSTANTIALLY PREJUDICIAL TO THE RIGHTS OF THE PLAINTIFF.
A review of the police report does not reveal any basis for this claim and therefore this claim is also dismissed.
I. THE PLAINTIFF NEXT RAISES THREE CLAIMS TO THE EFFECT THAT THERE WAS NO SUBSTANTIAL EVIDENCE TO SUPPORT A FINDING THAT PROBABLE CAUSE EXISTED TO ARREST HIM, TO SUPPORT A FINDING THAT THE PLAINTIFF WAS PLACED UNDER ARREST, OR TO SUPPORT A FINDING THAT THE PLAINTIFF WAS THE OPERATOR OF A MOTOR VEHICLE, SINCE ALL THREE FINDINGS WERE BASED ON INFORMATION CONTAINED IN AN UNSWORN POLICE REPORT.
This court has already ruled that the police report in question was admissible in evidence. Further form A-44 also forms a basis for all three of the findings that are being challenged. Accordingly, these three claims of the plaintiff are also dismissed.
In summary, this court concludes that the plaintiff's due process rights were not violated and further concludes that there was substantial valid evidence upon which the hearing officer made all four of his required findings. This court further concludes that substantial rights of the plaintiff were not prejudiced.
Accordingly the plaintiff's appeal is dismissed.
AXELROD, J.
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.] CT Page 7954